```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 18, 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TRUSTEES OF THE NEW YORK CITY                               :
DISTRICT COUNCIL OF CARPENTERS                              :
PENSION FUND, WELFARE FUND, ANNUITY                         :
FUND, and APPRENTICESHIP,                                   :
JOURNEYMAN RETRAINING, EDUCATIONAL                          :
AND INDUSTRY FUND, and TRUSTEES OF                          :
THE NEW YORK CITY CARPENTERS RELIEF                         :
AND CHARITY FUND,                                           :
                                                            :
                            Plaintiffs,                     :
                                                            :
              -v-                                           :          14-cv-06450 (KBF)
                                                            :
VINTAGE TILE AND FLOORING, INC. and                         :          OPINION & ORDER
VINTAGE FLOORING N TILE OF NY, INC.,                        :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On August 13, 2014, plaintiffs Trustees of the New York City District Council

of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship,

Journeyman Retraining, Educational and Industry Fund, and Trustees of the New

York City Carpenters Relief and Charity Fund (collectively, "the Funds" or

"plaintiffs") filed this action against defendants Vintage Flooring and Tile, Inc.

("Vintage 1")[1] and Vintage Flooring N Tile of NY, Inc. ("Vintage 2") (collectively,

"defendants"), alleging failure to pay required contributions to a group of employee

benefit plans pursuant to section 502(a)(3) of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3), and section 301

---

[1] Vintage 1 was initially incorrectly named as "Vintage Tile and Flooring, Inc."  (ECF No. 12 at 2.)

of the Labor Management Relations Act of 1974 ("LMRA"), as amended, 29 U.S.C. § 185.  (ECF No. 1 ("Compl.").)  The Funds also alleged that Vintage 2 is the alter ego, successor, or predecessor of Vintage 1, or that Vintage 1 and Vintage 2 constitute a single employer, and that therefore Vintage 2 should be held jointly and severally liable with Vintage 1 for a previous judgment entered against Vintage 1 and sanctions entered against Vintage 1 for frustrating the enforcement of that judgment.  (See Compl. ¶¶ 20, 23-27.)

Plaintiffs subsequently filed an amended complaint (the "Complaint") on December 18, 2014.  (ECF No. 15 ("Am. Compl.").)  The Funds served the summons and first amended complaint on Vintage 1 and 2 by personal service, at the office of the New York State Secretary of State, on December 24, 2014. (ECF Nos. 19-20.)  Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), the latest deadline for defendants to answer plaintiff's complaint was January 14, 2015.

Under Rule 55 of the Federal Rules of Civil Procedure, a court must follow a two-step process before entering default judgment.  First, under Rule 55(a), the Clerk of Court must determine that the party against whom a judgment for affirmative relief is sought has failed to "plead or otherwise defend" itself, and then enter that party's default.  See Fed. R. Civ. P. 55(a).  Second, under Rule 55(b)(2), the party seeking affirmative relief must apply to the court for a default judgment.  See Fed. R. Civ. P. 55(b)(2).

On February 13, 2015, the Funds obtained certificates of default against defendants.  (ECF No. 21.)  On April 24, 2015, the Funds filed a motion for default

judgment, which the Funds served on defendants on April 24, 2015. (ECF Nos. 24-28.) On April 27, 2015, the Court ordered defendants to appear and show cause why default judgment should not enter against them at a hearing on May 26, 2015. (ECF No. 29.) The Funds served this order, and again served the default judgment materials on defendants on April 29, 2015. (ECF No. 30.) Defendants did not appear at the May 26, 2015 hearing, and have not appeared or sought to defend themselves at any time during this litigation.

For the reasons set forth below, the Court hereby enters default judgment against defendants.

I.    DISCUSSION

Before entering a default judgment, the Court must review the complaint to determine whether plaintiff has stated a valid claim for relief. See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *24 (S.D.N.Y. Jan. 26, 2007) ("A default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant, regardless of whether the defendant filed a prompt response, or any response at all.").

For the reasons set forth below, the Court finds that the facts alleged in the complaint support defendants' liability under ERISA § 515 and Vintage 2's liability for Vintage 1's obligations under the previous judgment.

A.    Liability

In this case, the Funds assert two claims for relief: (1) defendants' violation of ERISA § 515, 29 U.S.C. § 1145, and (2) Vintage 2's joint and several liability for a

separate judgment that plaintiffs previously obtained against Vintage 1. (Am. Compl. ¶¶ 9-27.)

   1. <u>ERISA § 515</u>

  ERISA § 515 provides that "every employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Upon a finding that an employer has violated § 515, the employer is liable for damages under ERISA § 502(g)(2). <u>See</u> 29 U.S.C. § 1132(g)(2).

   a. <u>Liability of Vintage 1</u>

  Here, the Funds have pleaded sufficient facts to establish Vintage 1's liability for a violation of ERISA § 515. First, the Funds allege that Vintage 1 entered into a collective bargaining agreement (the "CBA") with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO (the "Union") on November 24, 2008. (Am. Compl. ¶ 11; Declaration of Luke Powers, ECF No. 26 ("Powers Decl.") ¶¶ 2-3 & ex. A.) Second, the Funds allege that Vintage 1 was required to make "specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union," and to furnish its books and payroll records upon request in order to conduct an audit and ensure compliance with required benefit fund contributions. (Am. Compl. ¶¶ 12-13.) Lastly, the Funds allege that Vintage 1 failed to pay its required contributions. (Am. Compl. ¶¶ 1, 20.) Accordingly, the Funds have stated a valid claim for relief under ERISA § 515 against Vintage 1.

b.  <u>Liability of Vintage 2</u>

The Funds further assert that Vintage 2 is jointly and severally liable for Vintage 1's obligations under the CBA because Vintage 2 is the alter ego, successor, or predecessor of Vintage 1, or because Vintage 1 and Vintage 2 are a "single employer" within the meaning of ERISA.  (Am. Compl. ¶ 20; ECF No. 27 ("Pls.'s Mem.") at 5.)

i.  <u>Alter Ego Status</u>

"The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" <u>Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.</u> ("<u>UNITE HERE</u>"), 629 F.3d 282, 288 (2d Cir. 2010) (quoting <u>Newspaper Guild of N.Y. v. NLRB</u>, 261 F.3d 291, 298 (2d Cir. 2001)). "Determining that an entity is an alter ego 'signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the [collective bargaining agreement].'" <u>Id.</u> (quoting <u>Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.</u>, 357 F.3d 266, 268 (2d Cir. 2004)).

"The test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case," while assessing the following key factors: "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." <u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>Trs. of the New City Dist. Council of</u>

<u>Carpenters Pension Fund v. Integrated Structures Corp.</u>, 595 Fed. App'x 15, 18 (2d Cir. 2014) (noting that whether two entities shared telephone numbers and equipment or kept their finances separate were relevant considerations in determining alter ego status). Moreover, "'[a]lthough the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer, it also applies to situations where the companies are parallel companies.'" <u>UNITE HERE</u>, 629 F.3d at 288 (quoting <u>Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.</u>, 139 F.3d 304, 307 (1st Cir. 1998)). "No one factor is controlling, and all need not be present to support a finding of alter ego status." <u>N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.</u>, 657 F. Supp. 2d 410, 421 (S.D.N.Y. 2009) (quoting <u>C.E.K. Indus. Mechanical Contractors, Inc. v. NLRB</u>, 921 F.2d 350, 354 (1st Cir. 1990)).

Here, the Funds allege that "Vintage 1 and Vintage 2 had substantially identical management, business purpose, operation, equipment, customers, supervision and/or ownership." (Am. Compl. ¶ 14.) Further, the Funds assert that, "[a]t relevant times," Vintage 1 and Vintage 2 employed the same carpenters, operated out of the same premises, shared the same phone number, had the identical business purpose of the installation of tile and other flooring, and "intermingled" their financial books and records. (Am. Compl. ¶¶ 15-20; Declaration of Michael Isaac, ECF No. 25 ("Isaac Decl.") ¶¶ 8, 11-12 & exs. C-D.) Additionally, the Funds have submitted a compliance form submitted by Vintage 1

to the Union and a section of the website buzzfile.com identifying Amanda DiGiuseppe as the owner of both Vintage 1 and Vintage 2, thereby impliedly alleging common management.  (Isaac Decl. ¶ 10, exs. D, F.)  The Funds have thus sufficiently alleged that Vintage 2 is an alter ego of Vintage 1, and therefore the Funds have sufficiently alleged that Vintage 2 is liable under ERISA § 515.

ii.   <u>Single Employer Status</u>

"A collective bargaining agreement binding on one employer may be enforced against a non-signatory employer if (1) the two employers constitute a 'single employer' and (2) the employees of the companies constitute a single appropriate bargaining unit."  <u>United Union of Roofers, Waterproofers, and Allied Workers Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.</u>, 547 Fed. App'x 17, 19 (2d Cir. 2013).  "Whether two entities constitute a 'single employer' is determined by four factors enumerated by the Supreme Court: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership."  <u>Id.</u>  The Second Circuit has "added two additional factors: (5) 'the use of common office facilities and equipment,' and (6) 'family connections between or among the various enterprises.'"  <u>Id.</u> (quoting <u>Lihli Fashions Corp. v. NLRB</u>, 80 F.3d 743, 747 (2d Cir. 1996)).  No single factor is dispositive and they need not all be present.  <u>Id.</u>  Single employer status ultimately depends on the particular facts of the case, and "is characterized by absence of an 'arm's length relationship found among unintegrated companies.'"  <u>Lihli</u>, 80 F.3d at 747 (quoting <u>NLRB v. Al Bryant, Inc.</u>, 711 F.2d 543, 551 (3d Cir. 1983)).

However, a finding that separate entities constitute a "single employer" is "not enough to bind all the separate companies to the collective bargaining agreements of any one of the companies." Id. Rather, it must also be shown that they "represent an appropriate employee bargaining unit." Id. Relevant considerations in determining whether the defendants' employees constitute a "bargaining unit" include "a community of interests among the relevant employees, . . . and factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." Brown v. Sandimo Materials, 250 F.3d 120, 128 n.2 (2d Cir. 2001) (internal quotation marks and citations omitted).

Here, the Funds allege that "[t]here was never an arm's length relationship between Vintage 1 and 2." (Am. Compl. ¶ 19.) Further, as explained above, the Funds allege that Vintage 1 and 2 employed the same carpenters, operated the same kind of business out of the same premises, shared a phone number, had intermingled books and records, and had the same owner. The Funds have thus alleged common management, interrelation of operations, centralized control of labor relations, and common ownership, and therefore have sufficiently alleged that the separate companies constitute a single employer. Further, by alleging that Vintage 1 and Vintage 2 were operationally integrated, operated out of the same geographic location, were under common supervision, and shared employees and lines of business, the Funds have adequately alleged that Vintage 1 and Vintage 2 represented an appropriate employee bargaining unit. Thus, the Funds have

sufficiently alleged single employer status, thereby providing another independent basis for Vintage 2's liability for violations of ERISA § 515.[2]

        2.    <u>Vintage 2's Liability for the Prior Judgment Against Vintage 1</u>

The Funds allege that on April 20, 2011, in an action filed in the Southern District of New York (No. 11 Civ. 1316), they obtained a judgment against Vintage 1 for $4,047.51 in damages as well as an order for Vintage 1 to produce all books and records necessary to conduct a payroll audit.  (Am. Compl. ¶ 23; Isaac Decl. ¶¶ 14-15 & ex. G.)  On July 18, 2012, the court issued an order against Vintage 1 that sanctioned Vintage 1 for failing to comply with the April 20, 2011 judgment and awarded plaintiffs $7,680.00 in fees and $69.31 in costs, and ordered Vintage 1 to provide the necessary records within fourteen days and pay $50.00 per day until it had so complied, or if it failed to do so within 30 days of the order, to pay $300.00 per day thereafter until it had so complied.  (Am. Compl ¶ 24; Isaac Decl. ¶ 16, ex. H.)

The Funds now seek a declaration that Vintage 2 is jointly and severally liable for Vintage 1's obligations to the Funds under this separate judgment.  As set forth above, the Funds have pleaded sufficient facts to establish that Vintage 2 is Vintage 1's alter ego and/or single employer.  Therefore, Vintage 2 may be held jointly and severally liable for Vintage 1's obligations under the previous judgment.

---

[2] As the Funds have sufficiently alleged that Vintage 2 is liable for violations of ERISA § 515 under both alter ego and single employer theories of liability, the Court need not address the Funds' allegations that Vintage 1 and Vintage 2 are successors and/or predecessors of each other.

B.    Relief

The Funds now request that the Court: (1) order Vintage 2 to produce its books and payroll records to the Funds for the purpose of conducting an audit and ensuring compliance in making required contributions under the CBA; (2) order Vintage 2 to pay any delinquent contributions determined as a result of the audit; (3) award the Funds their attorney's fees and the costs they incurred in prosecuting this action; (4) in connection with the prior judgment against Vintage 1, award the Funds $262,156.43 in damages from Vintage 2 plus $300.00 per day from the date of the amended complaint through the date of the judgment in this action.[3]  (Am. Compl.; Isaac Decl. ¶ 34.)  The Court grants the Funds' request for injunctive relief and damages in its entirety.

1.    Injunctive Relief

A court may award equitable relief as appropriate in an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce rights under ERISA § 115.  29 U.S.C. § 1132(g)(2)(E).  Because "injunctive relief does not follow automatically upon a finding of statutory violations," a plaintiff in an ERISA action who seeks injunctive relief on a motion for default judgment "must also show irreparable harm and the absence of an adequate remedy at law."  Local Union No. 40 of the Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Wi Constr., No. 12CV4854–LTS–MHD, 2015 WL 690811, at *23 (S.D.N.Y. Feb. 18,

---

[3] While the Court acknowledges that plaintiffs initially requested liquidated damages of 20% of the principal amount of the delinquency (Am. Compl.), the Court need not address this request because it was not included in plaintiffs' default judgment submissions (see Pls.'s Mem. 13-17; Isaac Decl. ¶ 34).

2015) (quotations omitted).  Courts regularly grant requests requiring defendants in ERISA actions to permit and cooperate with audits of their books and records for the purpose of determining what those defendants owe on their collective bargaining agreement obligations.  Id. at *23 (collecting cases).

Here, the Funds allege that under the CBA, Vintage 1 was required to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit and ensure compliance with required contributions (Am. Compl. ¶ 13; Powers Decl. ¶ 5 & ex. A art. XI), and, as explained above, the Funds have sufficiently alleged that Vintage 2 is Vintage 1's alter ego and/or that Vintage 1 and Vintage 2 are a single employer, such that Vintage 2 is bound by the CBA. The Funds have thus met the applicable standards for the granting of their requested injunction.  Accordingly, the Court orders Vintage 2 to furnish its books and records to the Funds, for the purposes of conducting an audit to determine contributions from the period November 25, 2008 to the present, and to pay any delinquent contributions determined as a result of the audit.

        2.    <u>Interest</u>

If an employer is found to have violated ERISA § 515, they are liable for interest on the unpaid contributions.  29 U.S.C. § 1132(g)(2)(B).  If there is a collective bargaining agreement, interest on the unpaid contributions is determined "by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]."  29 U.S.C. § 1132(g)(2)(E).  Here, the Funds allege that the CBA set an interest rate at the prime rate of Citibank plus 2%.  (Am. Compl. ¶ 21.)  Thus,

the Court awards interest, consistent with this rate, on any delinquent contributions discovered as a result of the audit.

       3.   <u>Attorney's Fees</u>

If an employer is found to have violated ERISA § 515, a district court may award a plaintiff "reasonable attorney's fees." 29 U.S.C. § 1132(g)(2)(D). A district court has "considerable discretion" in determining what constitutes a reasonable fee award. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008). A reasonable fee award should be based on a "reasonable hourly rate," which is "the rate a paying client would be willing to pay," as determined based on a holistic assessment of all of the circumstances at issue in the case. <u>Id.</u> at 190. A reasonable hourly rate is one in line with rates "prevailing . . . in the community for similar services by lawyers of reasonably comparable skill expertise and reputation." <u>McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund</u>, 450 F.3d 91, 96 (2d Cir. 2006) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)). The relevant community is "the district in which the reviewing court sits." <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 226, 232 (2d Cir. 1987). In determining the reasonable hourly rate, the court may rely on its knowledge of hourly rates at private firms. <u>See</u> <u>Miele v. N.Y. State Teamster Conf. Pension & Ret. Fund</u>, 831 F.2d 407, 409 (2d Cir. 1987). An applicant for an award of attorney's fees generally must submit "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the

nature of the work done." <u>N.Y. State Ass'n for Retarded Children. Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).

Here, the Funds seek $16,045.00 in attorney's fees for 75.80 hours of work by attorneys and paralegals, at the rate of $225.00 per hour for work performed by attorneys, and $90.00 per hour for work performed by paralegals through February 28, 2014, and $100.00 per hour for work performed by paralegals thereafter.  The Funds have also provided a breakdown of the tasks and distribution of hours among attorneys and paralegals, as well as the dates on which they were performed.  (<u>See</u> Isaac Decl. ex. L.)  Based on the Court's knowledge of legal practice and billing rates in this district, the Court finds that plaintiff's request for attorney's fees is reasonable, and adequately supported by documentation.  Accordingly, the Court awards plaintiff $16,045.00 in attorney's fees.

### 4.   Court Costs

If an employer is found to have violated ERISA § 515, a court may award plaintiff "costs of the action." 29 U.S.C. § 1132(g)(2)(D).  The Funds seek reimbursement of $618.81 in costs, consisting of filing and service fees.  (Pls.'s Mem. at 17; Isaac Decl. at ¶ 32 & ex. L.)  The Court finds that these requests are reasonable, and awards plaintiff $618.81 in costs.

### 5.   Damages Against Vintage 2 Consistent with Prior Judgment

While a party's default is considered a concession of all well-pleaded allegations of liability, it is not considered an admission of damages.  <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.,</u>

699 F.3d 230, 234 (2d Cir.2012). "There must be an evidentiary basis for the damages sought," id., and so a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty," Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1997). To determine the damages owed, courts often conduct an inquest hearing, but such a hearing is not required. See Cement, 699 F.3d at 234 ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages." (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir.1993)) (internal quotation marks omitted)). Here, the Court has not held an inquest hearing, and it relies solely on the papers provided by plaintiff.

The Funds seek the initial judgment amount of $4,047.51, the subsequent award of $7,749.31 in attorneys' fees and costs, plus sanctions in the amount of $50.00 per day for the 30 days following July 18, 2012, plus $300 per day for all of the following days of noncompliance, less the $1,940.39 that the Funds have recovered from Vintage 1. (See Am. Compl. ¶ 26; Isaac Decl. ¶¶ 17-19, exs. G, H.) In total, the Funds seek $252,300 in sanctions for the 866 days from Vintage 1's August 3, 2012 deadline to produce all books and records necessary to conduct a payroll audit (which was imposed by the court's July 18, 2012 order in the prior action), through December 18, 2014, the date the Funds filed the Complaint in this action, plus $300.00 per day from that date through the date of judgment in this action. (Am. Compl. ¶¶ 25, 27; Isaac Decl. ¶ 19 & ex. H.) The Funds therefore seek

damages of $262,156.43, plus $300.00 per day from the date of the amended complaint through the date of judgment as against Vintage 2.

The Court declines to award the Funds damages based on the sanctions imposed in the July 18, 2012 order in the prior action. An award of over $252,300 in sanctions against Vintage 2 for Vintage 1's frustration of a $4,047.51 judgment is excessive, particularly in light of the fact that Vintage 2 has not, until this Opinion & Order, been found liable for that judgment. Vintage 2 must first be given an opportunity to fulfill its obligations before this Court will effectively sanction it.

The Funds' other requests for damages, which are based on the initial judgment amount of $4,047.51, the subsequent award of $7,749.31 in attorneys' fees and costs, less the $1,940.39 that the Funds have recovered from Vintage 1, are granted. As explained above, the Funds have sufficiently alleged that Vintage 2 is Vintage 1's alter ego and/or Vintage 1 and Vintage 2 constitute a single employer, the Court hereby grants these request for damages as against Vintage 2. Vintage 2 is therefore liable to the Funds for $9,856.43.

## II.    CONCLUSION

For the reasons set forth above, the Court hereby enters judgment against defendants. It is ordered that:

1.  Vintage 2 shall furnish its books and records to the Funds, for the purposes of conducting an audit to determine contributions from the period November 25, 2008 to the present, and to pay any delinquent contributions determined as a result of the audit;

2.  Vintage 2 shall pay the Funds damages of $9,856.43;

3.  the Funds are awarded $16,045.00 in attorney's fees, $618.81 in costs, and

   interest consistent with the prime rate of Citibank plus 2% on any

   delinquent contributions discovered as a result of the audit.

The Clerk of Court is directed to close the motion at ECF No. 24 and to

terminate this action.

SO ORDERED.

Dated:      New York, New York
            June 18, 2015

_____
KATHERINE B. FORREST
United States District Judge